[Civ. No. 8475. First Appellate District, Division One.—October 22, 1932.]

EDITH BALDOCK, Respondent, v. THE WESTERN UNION TELEGRAPH COMPANY (a Corporation) et al., Appellants.

142

Pillsbury, Madison & Sutro, Francis R. Stark, Alfred Sutro, Eugene M. Prince and Eugene D. Bennett for Appellants.

Ford & Johnson and Fletcher A. Cutler for Respondent.

THE COURT.—Plaintiff was struck and injured by a bicycle ridden by defendant Perez, who was an employee of defendant corporation. The jury returned a verdict in her favor for the sum of $1750. Defendants moved for a directed verdict upon the grounds that there was no evidence of negligence on their part and that plaintiff was guilty of contributory negligence in failing to look in the direction from which the bicycle was approaching. This motion was denied, and later a motion for judgment notwithstanding the verdict was made. The last motion was also denied, and defendants have appealed from the orders and from the judgment entered upon the verdict.

On May 29, 1930, plaintiff alighted from a street-car which had been traveling in an easterly direction along Market Street in San Francisco. The car had stopped at a safety station on the corner of Seventh Street where all traffic had been halted by a stop signal. Several automobiles had stopped between the safety station and the sidewalk. Plaintiff passed between two of the automobiles in the direction of the sidewalk, and was about to step upon the curb when she was struck by the bicycle, which was moving toward the crossing, its course being along the right-hand side of the automobiles, between them and the sidewalk.

Plaintiff testified that before passing between the automobiles she looked in both directions, and looked again when she had passed them, but saw no approaching vehicles. The distance between said safety station and the curb was eleven feet and a few inches, and plaintiff testified that the distance from the curb to the right-hand side of the automobiles was four or five feet. According to one witness plaintiff was "just on the edge of the sidewalk" when she was struck, and another testified that she had one foot on the curb. Defendant Perez testified that two or three cars had stopped at the crossing, while another was moving by the side of the bicycle as it approached; that his bicycle was coasting at the rate of five or six miles an hour, and that the point of collision was about twenty-seven inches from the curb. He denied that he struck plaintiff, his version of the occurrence being that she came in contact with the side of the bicycle. He also stated that he was at all times looking in the direction of the crossing and gave no signal of his approach; further, that had he seen plaintiff before the collision he could have stopped "right away". The testimony of the eye-witnesses and the physical facts sustain plaintiff's contention as to how and where the collision occurred, and the evidence also tends to show that defendant Perez was traveling at a higher rate of speed than he testified.

Defendants contend that plaintiff failed to use ordinary care for her own safety, while she claims that regardless of any negligence on her part Perez had the last clear chance to avoid injuring her, and negligently failed to do so.

As stated, plaintiff testified that she twice looked in the direction of approaching traffic, but failed to see the bicycle.

A diagram in evidence shows that the traveled portion of the street between the car tracks and the sidewalk was narrowed over six feet by the safety zone, which was sixty feet in length. As a natural result of this condition operators of vehicles would swerve to the right when they reached the westerly end of the zone, and this probably explains why the bicycle was not seen by plaintiff when she started to cross.

The law does not require a pedestrian to look in the direction of approaching traffic during every instant of his progress (*Filson* v. *Balkins,* 206 Cal. 209 [273 Pac. 578]; *Gett* v. *Pacific Gas & Elec. Co.,* 192 Cal. 621 [221 Pac. 376]; *Rinker* v. *Carl,* 102 Cal. App. 436 [283 Pac. 317]; *Nickell* v. *Rosenfield,* 82 Cal. App. 369 [255 Pac. 760]); and where, as here, plaintiff looked twice before attempting to cross the space between the safety zone and the sidewalk and saw no vehicle approaching, this was some evidence of the use of care for her own safety, and the jury might reasonably have concluded that the bicycle was not then in the line of her vision (*Burgesser* v. *Bullock's,* 190 Cal. 673 [214 Pac. 649]; *Long* v. *Barbieri,* 120 Cal. App. 207 [7 Pac. (2d) 1082]; *Strange* v. *Los Angeles Examiner,* 124 Cal. App. 419 [12 Pac. (2d) 678]).

Defendants claim that regardless of other considerations plaintiff, by crossing where she did, violated an ordinance of the municipality prohibiting pedestrians from passing over roadways other than at a crosswalk, and was consequently guilty of negligence contributing to her injuries.

According to Perez, he was looking straight ahead at all times. In passing the westerly end of the safety zone he had a clear view of the street, and his speed was such that he could have quickly stopped his bicycle. Under such circumstances the jury was justified in disbelieving his testimony that he did not see plaintiff in time to avoid the collision (*Darling* v. *Pacific Electric Ry. Co.,* 197 Cal. 702, 703 [242 Pac. 703]); and the question whether he apprehended her dangerous position was also one for its determination (*Chappell* v. *San Diego & A. Ry. Co.,* 201 Cal. 560 [258 Pac. 73]). The last clear chance doctrine applies notwithstanding the continuing negligence of the plaintiff (*Girdner* v. *Union Oil Co.,* 216 Cal. 197 [13 Pac. (2d) 915]); and here the plaintiff was so close to the curb when struck as to

justify the conclusion that Perez by the exercise of ordinary care could have turned his bicycle sufficiently far to the left to avoid danger. We are satisfied that the evidence would fairly support a finding that he failed to use such care.

The verdict is sufficiently supported, and the motions mentioned were properly denied.

The judgment and orders appealed from are accordingly affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 21, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 19, 1932.